PEOPLE v WATERS

Docket No. 57047. Submitted May 13, 1982, at Lansing.—Decided
    July 19, 1982. Leave to appeal applied for.

   Ronnie C. Waters was charged with open murder, assault with
      intent to murder, and two counts of felony-firearm. Following a
      preliminary examination in the 48th District Court for the
      County of Oakland, Carl F. Ingraham, J., defendant was bound
      over on a charge of second-degree murder, assault with intent
      to murder, and two counts of felony-firearm. The second-degree
      murder charge was based on the magistrate's determination
      that no evidence of premeditation and deliberation existed. The
      people appealed to the Oakland Circuit Court. Gene Schnelz, J.,
      reversed the magistrate's refusal to bind defendant over for
      trial on the open murder charge and ordered the defendant
      bound over for trial on open murder. The return by the district
      court having been amended to charge open murder, defendant
      proceeded to a bench trial before Oakland Circuit Judge John
      N. O'Brien. Defendant was there convicted of first-degree mur-
      der, assault with intent to murder, and two counts of felony-
      firearm. Defendant appeals, questioning the lower courts' find-
      ings of premeditation and deliberation. Held:

      1. The circuit court judge properly determined that the
   magistrate's decision, that no evidence of premeditation and
   deliberation existed, was an abuse of discretion; a review of the
   whole matter indicates evidence of premeditation and delibera-
   tion was presented, as well as evidence from which the other
   elements of the crime could be inferred.

      2. The magistrate seems to have considered a reasonable
   doubt standard and determined the ultimate factual issue

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 21 Am Jur 2d, Criminal Law §§ 412, 413.
[5] 21 Am Jur 2d, Criminal Law § 430.
[6-8, 12] 40 Am Jur 2d, Homicide §§ 45, 52.
[9, 10] 40 Am Jur 2d, Homicide § 439.
   Homicide: presumption of deliberation or premediation from cir-
      cumstances attending the killing. 96 ALR2d 1435.
[11] 40 Am Jur 2d, Homicide §§ 265, 266.

instead of determining whether probable cause for a finding of premeditation and deliberation existed; such analysis was beyond the magistrate's discretionary powers and was an abuse of discretion.

3. Premeditation and deliberation is indicated by the fact that defendant held the pistol with two hands while pointing it at the victim, and there was a time-lapse of between two and four seconds between the two shots fired by the defendant.

4. There was sufficient evidence introduced at trial to justify a trier of fact in reasonably concluding that defendant was guilty beyond a reasonable doubt.

5. It can be inferred here that formation of a homicidal intent occurred between the time defendant drew the weapon and the instant he first pulled the trigger; several seconds passed between the formation of the homicidal intent and the firing of the fatal second gunshot and sufficient time passed for defendant to take a second look at the nature of his act.

6. The testimony regarding the circumstances of the killing itself was sufficient to allow a trier of fact to find premeditation and deliberation proved beyond a reasonable doubt. The trial court's determination was correct.

Affirmed.

1. CRIMINAL LAW — PRELIMINARY EXAMINATION — PROBABLE CAUSE — EVIDENCE.

An examining magistrate is to bind a defendant over for trial if it appears that a crime has been committed and that there is probable cause to believe the defendant committed it; while positive proof of guilt is not required, there must be evidence on each element of the crime charged or evidence from which those elements may be inferred (MCL 766.13; MSA 28.931).

2. CRIMINAL LAW — PRELIMINARY EXAMINATION — MAGISTRATE'S DETERMINATION.

A magistrate is required to make his determination regarding the binding over of a defendant for trial after an examination of the whole matter.

3. CRIMINAL LAW — PRELIMINARY EXAMINATION — PROBABLE CAUSE.

Probable cause for binding a defendant over for trial has been defined as a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.

4. COURTS — CIRCUIT COURTS — CRIMINAL LAW — MAGISTRATE'S
   RETURN — REVIEW — ABUSE OF DISCRETION.

   A circuit court judge may not substitute his judgment for that of
   the magistrate in reviewing the decision of a magistrate to
   bind over an accused person but may reverse the magistrate's
   decision only if it appears on the record that there has been an
   abuse of discretion.

5. APPEAL — CRIMINAL LAW — PRELIMINARY EXAMINATION — TRAN-
   SCRIPT.

   The review of a magistrate's decision to bind an accused over for
   trial is limited to the preliminary examination transcript.

6. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBER-
   ATION.

   Premeditation is to think about beforehand; deliberation is to
   measure and to evaluate the major facets of a choice or prob-
   lem.

7. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBER-
   ATION — THOUGHT PROCESSES.

   Premeditation and deliberation characterize a thought process
   undisturbed by hot blood; while the minimum time necessary
   to exercise this process is incapable of exact determination, the
   interval between initial thought and ultimate action should be
   long enough to afford a reasonable man time to subject the
   nature of his response to a second look.

8. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBER-
   ATION.

   Premeditation and deliberation is indicated in the first-degree
   murder trial of a criminal defendant where the evidence shows
   that the defendant held a pistol with both hands when pointing
   it at the victim.

9. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBER-
   ATION — APPEAL.

   An appellate court, in determining whether the trier of fact could
   properly find the defendant guilty of first-degree murder, must
   examine the totality of the circumstances to determine whether
   there is evidence to support the findings of the trier of fact; in
   particular, whether the findings of premeditation and delibera-
   tion are supported.

10. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — DELIBER-
    ATION — EVIDENCE — INFERENCES — RECORD.

    Premeditation and deliberation need not be established by direct

evidence in a trial for first-degree murder; the requisite state of mind may be inferred from the defendant's conduct but such inference must have an adequate basis in the record.

11. HOMICIDE — FIRST-DEGREE MURDER — EVIDENCE — DEADLY WEAPON — PREMEDITATION — DELIBERATION — INFERENCES.

   Possession of a deadly weapon in advance of a slaying is a fact from which premeditation and deliberation can be inferred where there are other circumstances showing a motive or plan which would enable a trier of fact to infer that the killing was not a spur-of-the-moment decision.

12. HOMICIDE — FIRST-DEGREE MURDER — INTENT — PREMEDITATION — DELIBERATION.

   Some time span between initial homicidal intent and ultimate action is necessary to establish the premeditation and deliberation which is required for a conviction of first-degree murder.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Lawrence J. Bunting,* Assistant Prosecuting Attorney, for the people.

*Waterman, Curry & Stanley,* for defendant.

Before: ALLEN, P.J., and CYNAR and C. J. FALAHEE,* JJ.

CYNAR, J. Following a nonjury trial held on February 5 through 9, 1981, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, assault with intent to murder, MCL 750.83; MSA 28.278, and two counts of felony-firearm, MCL 750.227b; MSA 28.424(2). On March 5, 1981, defendant was sentenced to a term of life imprisonment for murder, life for assault with intent to murder, and two years for each felony-firearm count. He appeals as of right.

Defendant was charged with the following offen-

* Circuit judge, sitting on the Court of Appeals by assignment.

ses on May 7, 1980: open murder, MCL 750.316, 750.317; MSA 28.548, 28.549, assault with intent to murder, MCL 750.83; MSA 28.278, and two counts of felony-firearm, MCL 750.227b; MSA 28.424(2). A preliminary examination was held on August 18, 1980, in the Oakland County 48th District Court.

In this appeal, defendant raises two issues, each dealing with the correctness of the lower courts' findings of premeditation and deliberation. The first issue raises the question of whether the magistrate abused his discretion in failing to bind over defendant to the circuit court on the charge of first-degree murder. The second issue concerns the question of whether the trial court erred when it determined that sufficient evidence of premeditation and deliberation was introduced at trial.

At the preliminary examination, it was stipulated that Deborah Porcelli died on May 3, 1980, as a result of a gunshot wound to her head. The prosecution presented six witnesses. No testimony was presented in behalf of the defense.

Joseph Porcelli, the victim's husband, stated that he parked their green and white 1973 Monte Carlo five or six rows behind the concession stand at the Miracle Mile Drive-In on May 2, 1980. Near the end of the first show, he noticed five young black males walk past his car toward the restrooms in the rear of the concession stand. After standing near the restrooms for some time, smoking until the movie ended, the youths walked toward the back of the drive-in. As they passed the Porcelli car, three walked on the passenger's side and two went to the driver's side. One of the individuals, standing approximately 12 to 15 feet from the driver's side, looked at Porcelli and said: "Hey, man, you got a light?" Porcelli, who smokes, was not smoking at that time. The other person on

the driver's side stood approximately 20 feet away. Porcelli, who was afraid because the car was surrounded, responded politely, "Sorry, I can't help you". As the inquirer walked away, Porcelli heard another voice utter, "You can help me". The next thing he saw, heard or felt, he was struck on the side of the head, fell across his wife's lap and he heard his wife scream.

Defendant's companions on May 3, 1980, Jessie Lee King, Michael Holmes, Richard Alston, and Roderick Howard, each testified at the preliminary examination. King testified that he kept a .22 caliber pistol, which he called "Marv", in his desk drawer for the pistol's owner, Holmes. On May 2, 1980, Holmes gave "Marv" to defendant to "style" for the evening. Defendant, King, Holmes, and Howard went to a Jefferson Junior High School dance, visited a McDonald's restaurant, and picked up Alston before arriving at the drive-in. There, they entered through a hole in the rear fence, proceeding to the concession stand. At the concession stand, the boys "messed around" for approximately one-half hour. While leaving the premises, they passed a green and white vehicle. Alston asked a man inside the automobile for a match. When the occupant responded that he could be of no help, the entire group walked away, except defendant, who was standing approximately eight feet from the car. Defendant said, "Can't have no match". Suddenly, King heard a shot, turned, heard another shot, and saw defendant with "Marv" drawn. According to King, defendant was eight feet from the car, holding the pistol with both hands. He stated that a "couple seconds" passed between the first and second shots. Holmes saw defendant draw the pistol and fire two shots in rapid succession into the vehicle's passenger

compartment. Holmes thought that defendant held the gun with two hands. Alston also believed that defendant held the pistol with two hands. He began to run after the first shot, and heard the second shot being fired approximately four seconds later. Howard turned when he heard the shots, observing the driver's side window burst. However, he did not see the gun. The boys ran, escaped through the hole in the rear fence, and gathered at King's automobile. There, defendant stated that he did not mean to shoot; instead, he meant only to scare the couple. The following day, defendant phoned King and informed him that the lady had died. Later in the evening, King and Holmes tossed "Marv" into nearby Crystal Lake.

State Police Sergeant Michael C. Arrowood stated that it took between 10 and 11 pounds of pressure to pull the murder weapon's trigger (at trial, it was testified that by first cocking the trigger, the weapon could be fired with two to three pounds of pressure).

At the conclusion of the testimony at the preliminary examination, defendant contended that there had been no showing of premeditation and deliberation. The magistrate agreed, binding over defendant on a second-degree murder charge, MCL 750.317; MSA 28.549, assault with intent to murder, and two felony-firearm counts. On the appeal of the people to the circuit court the circuit judge overturned the magistrate's decision, reinstating the open murder count. Defendant contends the circuit court judge's decision constitutes reversible error. We disagree.

An examining magistrate is to bind a defendant over for trial if it appears that a crime has been committed and that there is probable cause to believe defendant committed it. MCL 766.13; MSA

28.931; *People v Asta,* 337 Mich 590, 609-610; 60 NW2d 472 (1953). While positive proof of guilt is not required, there must be evidence on each element of the crime charged or evidence from which those elements may be inferred. *People v Oster,* 67 Mich App 490, 495; 241 NW2d 260 (1976); *People v Goode,* 106 Mich App 129, 136; 308 NW2d 448 (1981). The magistrate is required to make his determination after an examination of the whole matter. *People v King,* 412 Mich 145, 154; 312 NW2d 629 (1981). Probable cause is defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged. *People v Dellabonda,* 265 Mich 486, 490; 251 NW 594 (1933). In reviewing the decision of a magistrate to bind over an accused person, a circuit court judge may not substitute his judgment for that of the magistrate, but may reverse a magistrate's decision only if it appears on the record that there has been an abuse of discretion. *People v Talley,* 410 Mich 378, 385; 301 NW2d 809 (1981); *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115, 121; 215 NW2d 145 (1974). Review is limited to the preliminary examination transcript. *People v Charles D Walker,* 385 Mich 565, 572; 189 NW2d 234 (1971).

In *People v Morrin,* 31 Mich App 301, 329-330; 187 NW2d 434 (1971), the elements of premeditation and deliberation were defined as follows:

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is

incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'." (Footnotes omitted.)

Accord, *People v Mullaney,* 104 Mich App 787, 793; 306 NW2d 347 (1981).

We have carefully considered and distinguished the Supreme Court's recent decision in *People v King, supra,* from the case at bar. There, the defendant was charged with first-degree murder. At the preliminary examination, both prosecution and defense presented evidence. The magistrate bound over defendant on the charge of manslaughter. After the circuit court found no abuse of discretion, the prosecutor appealed to this Court. In an unpublished opinion a Court of Appeals panel reversed, finding that the prosecutor had presented evidence on each element of first-degree murder. In reversing and remanding to the circuit court for further proceedings on the manslaughter charge, the Supreme Court determined that this Court's inquiry was too narrow and stated on page 154:

"Without regard to the defense's evidence of intoxication and provocation, the Court of Appeals found the prosecution had presented evidence on each element of first-degree murder and therefore found an abuse of discretion in the magistrate's failure to bind over on that charge. In so doing, the Court of Appeals too narrowly conceived the scope of the inquiry. The inquiry is not limited to whether the prosecution has presented evidence on each element of the offense. The magistrate is required to make his determination 'after an examination of the whole matter'. Although the prosecution has presented some evidence on each element, if upon an examination of the whole matter the evidence is insufficient to satisfy the magistrate that

the offense charged has been committed and that there is probable cause to believe that the defendant committed it, then he should not bind the defendant over on the offense charged but may bind him over on a lesser offense as to which he is so satisfied." (Footnote omitted.)

The magistrate in the case before us determined that no evidence of premeditation and deliberation existed.

Testimony at the preliminary examination indicated that defendant was about 20 feet from the victim's automobile when the request for a match was denied. When the shooting occurred, defendant was standing approximately eight feet from the vehicle holding the gun in both hands with arms outstretched pointing toward the car. Holding a weapon with two hands when pointing it at the victim is indicative of premeditation and deliberation. See *People v Tilley,* 405 Mich 38, 46; 273 NW2d 471 (1979). Further, the testimony indicates a time-lapse of between two seconds and four seconds between the first and second shots.

A review of the whole matter indicates evidence of premeditation and deliberation was presented, as well as evidence from which the other elements could be inferred. Rather than determine whether probable cause for a finding of premeditation and deliberation existed, the magistrate seems to have considered a reasonable doubt standard and determined the ultimate factual issue. Such analysis is beyond the magistrate's discretionary powers. Accordingly, the magistrate's decision was properly determined by the circuit court to be an abuse of discretion.

At trial, the testimony was substantially similar to that at the preliminary examination, and even more compelling in support of defendant's guilt.

The defense presented no witnesses and defendant did not take the stand.

Defendant argues that insufficient evidence of premeditation and deliberation was introduced at trial to support his conviction. We disagree. Our review of the record shows that there was sufficient evidence introduced to justify a trier of fact in reasonably concluding that defendant is guilty beyond a reasonable doubt, *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), and considering the entire record, it does not appear that the trial court clearly erred in finding that there was in fact premeditation and deliberation. *People v Triplett,* 105 Mich App 182; 306 NW2d 442 (1981).

The totality of the circumstances needs to be examined in order to determine whether there is evidence to support the findings of the trier of fact; in particular, whether the findings of premeditation and deliberation are supported. *People v Tilley, supra,* 44.. Premeditation and deliberation need not be established by direct evidence. The requisite state of mind may be inferred from the defendant's conduct. Such an inference, however, must have an adequate basis in the record. *People v Hoffmeister,* 394 Mich 155, 158-159; 229 NW2d 305 (1975).

Testimony at trial showed that defendant acquired the pistol several hours before the killing. After leaving the gun under an armrest in King's vehicle for most of the evening, defendant carried the pistol into the drive-in. Possession of a deadly weapon in advance of a slaying is a fact from which premeditation and deliberation can be inferred. *People v Livingston,* 63 Mich App 129, 133; 234 NW2d 176 (1975). However, in those cases where use of a deadly weapon has been held to evidence premeditation, there were other circum-

stances showing a motive or plan which would enable a trier of fact to infer that the killing was not a spur-of-the-moment decision. *People v Morrin, supra,* 333. Here, there is no direct evidence of a plan or motive existing prior to the exchange of words which preceded the shooting.

The circumstances of the killing itself, however, provide the strongest argument for a finding of premeditation and deliberation. The record shows that after Alston was denied a light, defendant stated, "Can't have no match". From this point, witness King's testimony is most illustrative, as he turned upon hearing the first shot. He saw defendant holding the pistol with two hands, the driver's side window collapsing, and the man inside the vehicle fall. After a two-to-three-second pause, another shot was fired, and King observed the woman occupant slump. It is well-settled that some time span between the initial homicidal intent and the ultimate action is necessary to establish premeditation and deliberation. *People v Hoffmeister, supra,* 161. Here, it can be inferred that formation of a homicidal intent occurred between the time that defendant drew the weapon from his waistband and the instant he first pulled the trigger. Testimony indicates that it was the second shot that killed Deborah Porcelli. Thus, it appears that several seconds passed between the formation of a homicidal intent and the firing of the fatal gunshot. During this interval, defendant saw the window burst and the male figure fall. Before defendant squeezed the trigger again, discharging the second bullet, sufficient time passed for defendant to take a second look at the nature of his act.

In *People v Tilley, supra,* the defendant held the murder weapon, a pistol, with two hands. Without

explanation, the Supreme Court deemed this fact to be indicative of premeditation and deliberation. Presumably, the Court reasoned that the act of raising a second hand steadied the position of the weapon in the direction of the target.

Here, the trial court concluded that malice was the moving cause of the shooting, and that the shooting was not accidental or merely intended to frighten the Porcellis. The trial judge noted that at the time the defendant and his companions arrived at the drive-in, the gun was not left behind in the car as it had been on earlier occasions. The defendant carried the gun in his waistband upon entering the drive-in. Further, the court noted the remark attributed by some of the witnesses to the defendant when one of the party was refused a light was, "Oh, can't have a match, huh?" This suggested to the court an existing state of mind, a hostile feeling of the speaker, to punish or criticize in some fashion the individual who refused to give a light.

Regarding premeditation, the trial court noted that witness King, who was at the rear corner of the car, saw the man in the car drop after the first shot, then a second shot was discharged and the woman in the car fell. Defendant was closer to the car than King, and so had an even clearer view of the consequences of his actions. After the man dropped and the window fell, there could not have been a better opportunity to recognize what might happen if a second shot were fired, and the defendant chose to shoot again. The court found premeditation beyond a reasonable doubt.

We conclude that the testimony regarding the circumstances of the killing itself was sufficient to allow a trier of fact to find premeditation and

deliberation proved beyond a reasonable doubt. We are convinced the trial court's determination was correct.

Affirmed.