# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES OSAKWE WHITE,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No. 323929
Kent Circuit Court
LC No. 14-003355-FH

Before: MURPHY, P.J., and WILDER and BORRELLO, JJ.

PER CURIAM.

Defendant was convicted of circumventing the operation of an electronic monitoring device, MCL 771.3f(1), and sentenced as a fourth-offense habitual offender, MCL 769.12, to 2-1/2 to 15 years' imprisonment. He appeals his conviction and sentence as of right. We affirm.

Defendant was a parolee under the supervision of agent Randy Dockins. As part of his parole, defendant was subject to electronic monitoring, which required him to wear an ankle bracelet and to carry or possess a GPS tracking device at all times. As explained by Dockins, the ankle bracelet and the tracking device worked in tandem; if the tracking device became separated from the ankle bracelet by more than approximately 20 or 30 feet, they would stop communicating with one another, making it impossible to track defendant's movements.[1]

Defendant's conviction arises from events that occurred on March 6, 2014. On that date, at approximately 7:45 p.m., Dockins received a notification that defendant had not returned home in time for his curfew. Dockins called defendant's GPS tracking device, but he did not answer. Then, at approximately 8:15 p.m., Dockins received a "bracelet gone" alert, indicating that defendant's ankle bracelet was no longer in proximity to his tracking device. The last known location of the tracking device was near an address on Pine Avenue in Grand Rapids, but defendant was not found at that location. When Dockins went to defendant's home the following morning, he was told that defendant "took off and didn't come back." For a month thereafter, Dockins had no knowledge of defendant's whereabouts. Defendant's only contact with Dockins during that timeframe was a telephone call, in which defendant acknowledged his

---

[1] The GPS tracking device was similar in appearance and function to a cellular telephone.

-1-

noncompliance and told Dockins that he would turn himself in. However, defendant never actually did so. He was eventually arrested on April 2, 2014. When later asked by Dockins why he had absconded, defendant told Dockins that he had accidentally left his GPS tracking device at the Pine Avenue address, but when he went back to retrieve it, he learned that "somebody named Brad" had thrown the device out of a window. Defendant claimed that he searched for the tracking device to no avail. Thereafter, he stayed from "place to place," planning to turn himself in, but never did.

Consistent with his statements to Dockins, defendant's theory of defense at trial was that he did not *knowingly* circumvent the operation of his electronic monitoring device, as required to sustain a conviction under MCL 771.3f(1). To show knowledge and an absence of an accidental event, the prosecution elicited testimony from Dockins that defendant had twice previously circumvented electronic monitoring devices by separating himself from his GPS tracking device and removing his ankle bracelet. On the first occasion, in November 2012, he absconded for approximately 6 months before being arrested. On the second occasion, in November 2013, he absconded for approximately one month before again being arrested. At the close of the prosecution's case, defendant moved for a directed verdict of acquittal, but the trial court denied the motion. The jury then found defendant guilty.

On appeal, defendant first argues that the trial court erred by allowing Dockins to testify regarding defendant's previous parole violations. We disagree. We review a trial court's decision whether to admit evidence for an abuse of discretion, but review preliminary questions of law, such as whether a rule of evidence precludes admissibility, de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, *knowledge*, identity, or *absence of mistake or accident when the same is material*, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [Emphasis added.]

In *People v Jackson*, 498 Mich 246, 259-260; 869 NW2d 253 (2015), our Supreme Court recently reiterated the well-established framework with respect to analyzing the admissibility of other-acts evidence under MRE 404(b):

> "To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is not simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character. The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity. Evidence relevant to a noncharacter purpose is admissible under MRE

-2-

404(b) even if it also reflects on a defendant's character. Evidence is inadmissible under this rule only if it is relevant solely to the defendant's character or criminal propensity. Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes." [Citations, ellipses, emphases, and internal quotation marks omitted.]

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002).

Defendant does not argue that the prosecution failed to articulate a proper purpose for the admission of the evidence under MRE 404(b)(1), or that the evidence was irrelevant to that purpose. In any event, our review of the record reflects that these threshold requirements were satisfied. Specifically, as the trial court correctly reasoned, the evidence was offered for the proper purpose of negating defendant's claim of accident and showing, to the contrary, that the circumvention of his electronic monitoring device was knowing and intentional. Moreover, the evidence was relevant to these noncharacter purposes. Defendant's knowledge was material to the case, inasmuch as it was an element to be proved by the prosecution. MCL 771.3f(1); *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998) ("the elements of the offense are always 'in issue' and, thus, material"). Moreover, evidence that defendant had previously circumvented the operation of his electronic monitoring device tended to undermine or negate defendant's claim that he accidentally left his GPS tracking device at his friend's house on the night in question, as well as to prove that defendant acted purposely, knowingly, and with an intent to abscond. In other words, the evidence made it "more probable" that defendant had the requisite knowledge that he was circumventing the operation of his electronic monitoring device and "less probable" that his actions were merely accidental. MRE 401.

The crux of defendant's argument is that the challenged evidence was unfairly prejudicial under MRE 403. We disagree. Certainly, the evidence was prejudicial, inasmuch as all relevant evidence is prejudicial. *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). However, the probative value of the evidence was not "*substantially* outweighed by the danger of *unfair* prejudice." MRE 403 (emphasis added). The evidence did not inject "considerations extraneous to the merits of the lawsuit," *McGhee*, 268 Mich App at 614 (quotation marks and citation omitted), and there is minimal likelihood that it was given "undue or preemptive weight by the jury," *Crawford*, 458 Mich at 398. In reaching this conclusion, we acknowledge defendant's emphasis on that part of Dockins's testimony wherein he indicated that, because of a technicality, defendant was not charged in conjunction with his 2013 violation, thereby receiving a "freebie" with regard to that violation. However, the prosecution did not elicit or proffer this particular testimony; rather, as the prosecution correctly points out, the testimony came during defense counsel's cross examination of Dockins. It is clear from the record that the testimony was non-responsive. Defense counsel could have minimized any perceived error by objecting, cutting Dockins off, or asking the trial court to strike the testimony. However, she did no such

thing.  In fact, to the contrary, defense counsel further perpetuated any possible error by asking a follow-up question that allowed Dockins to further explain why defendant was given a "freebie" with regard to this 2013 violation.  As such, defendant invited expansion of any error.  Moreover, the evidence concerning the 2013 parole violation did not transform from being admissible to inadmissible simply because it was divulged that there was no prosecution or conviction associated with the violation.  In sum, the trial court did not abuse its discretion in allowing the challenged evidence.   Further, we cannot conclude that it is more probable than not that defendant would have been acquitted but for the MRE 404(b) evidence, assuming an error in admitting the evidence.  *Lukity*, 460 Mich at 495 (discussing harmless error under MCL 769.26).  While the challenged evidence clearly benefited the prosecution's case, the most damning evidence against defendant was, indisputably, that he absconded and refused to turn himself in.  Logic dictates that had this truly been a case involving a mere accident, defendant would have immediately contacted Dockins, explained the situation, and complied with any demands or requests made by Dockins.

Defendant next argues that there was insufficient evidence to support his conviction.  In a similar vein, defendant argues, in a separate brief submitted pursuant to Supreme Court Administrative Order No. 2004-06, Standard 4, that the trial court erred in denying his motion for a directed verdict.  We disagree with both arguments.

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction.  *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002).  In reviewing the sufficiency of the evidence, this Court must view the evidence, whether direct or circumstantial, in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt.  *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).  A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses.  *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992).  Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime.  *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant.  *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).  We resolve all conflicts in the evidence in favor of the prosecution.  *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).  These principles are also applicable to our review of a trial court's ruling on a motion for a directed verdict of acquittal, limited, of course, to examination of the evidence presented during the prosecution's case in chief.  See *People v Aldrich*, 246 Mich App 101, 122-123; 631 NW2d 67 (2011).

The statute pursuant to which defendant was charged, MCL 771.3f(1), provides, in relevant part:

(1) A person shall not knowingly and without authority remove, destroy, or circumvent the operation of an electronic monitoring device or knowingly interfere with a signal, impulse, or data that is being transmitted by or stored

-4-

within an electronic monitoring device worn or otherwise used by an individual as a condition for any of the following:

* * *

(d) Parole.

Accordingly, to sustain a conviction, the prosecution had to establish (1) that defendant was required to wear or use an electronic monitoring device as a condition of parole, (2) that defendant circumvented the operation of that device,[2] and (3) that defendant did so knowingly and without authority.

There is no dispute in this case that there was sufficient evidence showing that defendant was on parole, that he was required to wear or use an electronic monitoring device as a condition of parole, that the operation of the electronic monitoring device was circumvented by the separation of the GPS tracking device from the ankle bracelet, and that the device was circumvented absent authorization. The only issue for appeal concerns the sufficiency of the evidence showing that defendant "knowingly" circumvented the operation of the electronic monitoring device. This Court in *Kanaan*, 278 Mich App at 622, observed:

> With regard to the argument concerning knowledge, because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented. [Citations omitted.]

Undoubtedly, defendant told Dockins that he accidentally left the GPS tracking device at his friend's house. However, there was sufficient evidence to undermine defendant's story and to prove, through reasonable inferences flowing from the evidence, that he acted knowingly on March 6, 2014. First, there was the evidence that defendant had previously circumvented his electronic monitoring device on two separate occasions. Furthermore, there was testimony by Dockins that defendant failed to answer Dockins's call *before* separation of the tracking device from the ankle bracelet, that the "bracelet gone" alert never "cleared" despite defendant claiming that he returned to the Pine Avenue address to look for the device, and that defendant did not return home on the night in question. Moreover, defendant's conduct in the month thereafter—absconding, calling Dockins to acknowledge his noncompliance but then remaining on the loose without his tracking device, and failing to further contact Dockins—was more than sufficient to establish a violation that was committed knowingly.

In sum, the evidence—all presented in the prosecution's case-in-chief—was sufficient to support defendant's conviction. As such, the trial court did not err in denying defendant's motion for a directed verdict. We acknowledge defendant's argument that the trial court made an impermissible credibility determination in rendering its decision on the motion for a directed

---

[2] The prosecutor did not pursue a removal or destruction theory, only circumvention.

verdict. See *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). The record, however, directly contradicts defendant's claim. In reaching its decision, the trial court acknowledged that there were two possible scenarios—one consistent with innocence and one consistent with guilt—either of which, if believed by the jury, would dictate the outcome of the trial. The trial court gave no opinion as to which scenario it found to be more believable. Instead, it expressly indicated that it would leave it for the jury to decide. The trial court's decision was thus consistent with its duty to view the evidence in the light most favorable to the prosecution, *Aldrich*, 246 Mich App at 122, but to refrain from making credibility determinations, *Mehall*, 454 Mich at 6. There was no error.

Defendant finally argues that he is entitled to resentencing because his minimum sentence of 2-1/2 years, while being within the guidelines minimum sentence range, was disproportionate to the offense and offender. "However, a sentence within the guidelines range is presumptively proportionate." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). And defendant has failed to identify any "unusual circumstances that would render [his] presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000). The minimum sentence of 2-1/2 years was quite appropriate given the complete disregard of the terms of parole and defendant's status as a fourth-habitual felony offender.

Affirmed.

/s/ William B. Murphy
/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello

-6-